**NATIONAL AVIATION UNDERWRITERS, INC., d/b/a National Insurance Underwriters, Appellant,**

v.

**Raymond F. FISCHER and Fischer Construction Co., Inc., Appellees.**

**No. 18739.**

United States Court of Appeals
Eighth Circuit.

Nov. 30, 1967.

V. Owen Nelson, of Iverson, Coulter & Nelson, Minneapolis, Minn., for appellant.

Bruce B. James, Minneapolis, Minn., for appellees; Charles T. Hvass, of Hvass, Weisman, King & Allen, Minneapolis, Minn., on the brief.

Before VAN OOSTERHOUT, MATTHES and MEHAFFY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Defendant, National Aviation Underwriters, Inc., has taken this timely appeal from judgment based on a jury verdict in favor of plaintiffs, Raymond F. Fischer and Fischer Construction Co., Inc., for $39,750. Diversity of citizenship jurisdiction is established.

Defendant through Richard Kuklock, its regional representative, issued to plaintiffs a binder effective for thirty days commencing October 30, 1965, insuring their 1961 Beechcraft Travelaire airplane here involved with broad coverage including hull and property damage in the amount of $40,000 with $250 deductible. Authorized pilots named are Ray Fischer and Herman Hemker. The use to be made of the plane is described as business and pleasure. The premium has been paid. Kuklock's authority to issue the binder is not questioned. Plaintiffs obtained the insurance through their insurance broker Lund, who was not an agent of the defendant. The insured plane, operated by Hemker, was completely destroyed in an accident on November 14, 1965. The amount of damage is stipulated and is not in issue.

Defendant by answer raised the issue that the insurance was not in effect at the time of the accident for the following reasons: (1) Plaintiffs fraudulently concealed the nature of their interest in the plane and falsely represented Fischer Construction Co. was the owner when in fact it was only a lessee with option to buy. (2) Plaintiffs fraudulently concealed the fact that a prior policy on the plane had been canceled and that a request for coverage had been rejected. (3) Plaintiffs falsely concealed the nature of the use of the aircraft to be made by the additional pilot Hemker.

The court by its instruction withdrew the first defense above stated from the

jury by advising the jury as a matter of law that the issue of ownership of the aircraft was immaterial and that the jury should not consider such issue. The court likewise instructed the jury that the second defense raised was entitled to no consideration. Proper exceptions were made and preserved to each of such instructions. We find the court committed no error in giving such instructions withdrawing defenses 1 and 2.

Minn.Stat. § 60.85 provides:

"Misrepresentation by applicant

No oral or written misrepresentation made by the assured, or in his behalf, in the negotiation of insurance, shall be deemed material, or defeat or avoid the policy, or prevent its attaching, unless made with intent to deceive and defraud, or unless the matter misrepresented increases the risk of loss."

■ Fischer Construction Co. in the latter part of December 1963 leased the plane here in controversy by a written lease from A. W. Schnuerle Construction Co. for a period of forty months with monthly rental payments of $811.50, with option to purchase at a specified price, the rental payments to apply upon the purchase price. The lessee, absent default, was in complete control of the plane. The lease was immediately assigned for a valuable consideration by Schnuerle to Franklin National Bank, to whom Fischer made all monthly payments which he kept current. At the request of the Bank, Fischer Construction Co. had given notice of its intention to exercise the purchase option. At the time the insurance binder was issued, legal title to the plane had not passed to plaintiffs, the title apparently being held by the Bank as security. A lien in favor of the Bank for some $32,000 was reported to defendant and was confirmed by the Bank. Loss payable clause to the Bank is noted in the policy. Plaintiffs were in complete control of the plane and had at least an equitable interest therein. We agree with the trial court that there has been no intention to deceive established and that the lack of complete accuracy in the ownership representation in no way increased the insurer's risk.

In McLevis v. St. Paul Fire & Marine Ins. Co., 165 Minn. 468, 206 N.W. 940, the insured inadvertently represented that the title to his homestead was in him when in fact he was only a life tenant. The court held that the representation was not fraudulent and not material to the risk and that the policy provided coverage.

■ On the second defense, the evidence discloses that the plaintiffs voluntarily canceled the prior existing insurance upon the plane after they had obtained defendant's binder. The insurance was not canceled by the prior insurance carrier nor did such carrier refuse to renew the existing policy. Neither plaintiffs nor their broker Lund were ever asked either prior to the issuance of the binder or subsequently thereto with respect to what efforts, if any, had been made to obtain the coverage applied for elsewhere. The only relevant question in the written application subsequently furnished reads: "Has any insurer cancelled or refused to renew any kind of aircraft or automobile insurance for any pilot named herein?" Such question was properly answered, "No."

■ The general rule is that absent fraud an applicant's failure to disclose facts about which no questions were asked will not avoid the policy. American Eagle Fire Ins. Co. v. Peoples Compress Co., 10 Cir., 156 F.2d 663, 667; Wharton v. Aetna Life Ins. Co., 8 Cir., 48 F.2d 37, 44; Business Men's Assur. Co. v. Campbell, 8 Cir., 32 F.2d 995, 997; 45 C.J.S. Insurance § 497.

We find no substantial evidence of the fraudulent concealment of any fact material to the risk. If defendant desired more information with respect to plaintiffs' activities in seeking to obtain insurance, such information should have been requested. Information that other companies had declined to accept the risk because of the addition of Hemker as a pilot did not materially affect the risk if, as hereinafter set out, the jury ac-

cepted plaintiffs' testimony that the facts relating to the lease of the plane to Hemker had been fully disclosed. The third defense with respect to the concealment of the use by Hemker was submitted to the jury, who found for the plaintiffs upon such issue.

█ Defendant urges that the court erred in denying its motion for directed verdict made at the close of all the evidence. The grounds urged in support of such motion are substantially those raised by the answer. For the reasons hereinabove set forth with respect to the first two defenses, it clearly follows that the motion was properly denied upon such grounds. The third defense presents a factual issue for the jury. Plaintiffs conducted no personal negotiations with defendant's representative prior to the issuance of the insurance binder. Thus, if any false or fraudulent representations were made as to use which are chargeable to plaintiffs, they must have been made by their insurance broker Lund. Lund as a witness testified that he fully advised Kuklock that Hemker was to be named as a pilot and that the plane was to be used by Hemker from time to time for his own purposes, for which he was to pay plaintiffs $20 per hour. Such sum was considerably below commercial rental rates which the evidence shows run to $50 an hour or more. Kuklock denied that he was given such information. The credibility of the witnesses presents a jury issue. If Lund's version of the conversation is believed, as it apparently was, it would be the responsibility of defendant and its representatives to classify the type of use to specify in the policy and to fix the appropriate premium. We are satisfied that substantial evidence supports the jury's verdict upon this issue and that no error was committed by the court in refusing to direct the verdict in favor of the defendant.

██ In explaining the third defense to the jury, the court stated "by and large, the jury should consider the testimony of only two witnesses." (Lund and Kuklock.) Defendant excepted to such instruction upon the ground that it in effect tells the jury to disregard the testimony of other witnesses, such as Stallman and Weber, on such issues as exposure and materiality of the use. The court immediately expressed a willingness to correct such instruction and in effect adopted and read to the jury a modification thereof prepared by defendant's counsel which in substance told the jury that the court by referring to two witnesses did not intend to imply that the evidence of other witnesses should be disregarded, and that the jury should give full consideration to the testimony of all witnesses. No exception was taken to the instruction as revised; hence we do not believe that the defendant has preserved any exception to the revised instruction. In any event, we are satisfied that the additional instruction considered with the instructions as a whole removed any prejudice that might have been created by the instruction originally given and excepted to.

█ The court, after properly advising the jury that the defendant had the burden of proof on its affirmative defense, and after giving an acceptable instruction upon the burden of proof, then proceeded to tell the jury that this is a civil case and that proof beyond a reasonable doubt is not required. Defendant excepted on the ground that the instruction brought to mind the existence of such a burden rather than the possibility of taking it out of the case. The discussion on the exception indicates that some of the jury panel had served on criminal juries and there was a likelihood that the reasonable doubt rule had been erroneously applied in civil cases. No authorities on this issue are cited by either party. It is not usual to give an instruction such as this and doing so may well be more confusing than helpful. We are satisfied, however, that no prejudicial error has resulted.

██ While Mr. Weber, a representative of the defendant who did not issue the binder or directly participate in the negotiations with plaintiffs, was on the stand testifying as to insurance coverage

practices of his company and the industry, the court observed that the jury could not hear the witness. Defendant's counsel then stated, "Speak up, Mr. Weber, please." The court then stated, "Bad things happen to people who don't speak up." Defendant for the first time upon appeal raises the issue that such statement was prejudicial. It is unfortunate that the statement was made. The statement is ambiguous. When read in context, it appears to have been intended solely to encourage the witness to raise his voice. There is nothing to indicate that the court was casting any aspersions upon the credibility of the witness. We do not believe that such isolated statement had any bearing upon the result in this case. In any event, absent proper exception or motion for mistrial, no error is preserved for review. Petschl v. United States, 8 Cir., 369 F.2d 769, 773.

A careful consideration of the entire record satisfies us that defendant has had in all respects a fair trial and no prejudicial error has been committed which would require a reversal.

The judgment is affirmed.